STATE ex VAN CAMP v WELLING

Ohio Common Pleas, Wood Co

No 26417. Decided Aug 8, 1936

## OPINION

By CONN, J.

The defendant has filed a motion herein for an order requiring Verda Van Camp and her child, alleged to be the illegitimate child of the defendant, to submit to a blood test for the purpose of determining the parentage of said child, such test to be made by a recognized pathologist, and at such time as may be fixed by the court. The issue thus raised has been submitted to this court on the arguments of counsel and citation of authorities.

It is proper to observe in the first instance that while bastardy proceedings are partly of a civil and partly of a criminal nature, the Ohio courts are inclined to place them in the civil category and have applied the various provisions of the Code of Civil Procedure to such actions. **Vol. 5 O. Jur., §5, page 543.**

Under the rules of civil procedure, and in harmony with the majority view, it is well established in Ohio that power inheres in the court to require the plaintiff in an action for personal injuries to submit to a physical examination in order to ascertain the true nature and character of her injuries. **37 Oh St 104, 123 Oh St 303, 22 O. Jur., §2, page 140.**

On the issue of the paternity of a child, the courts are not in harmony as to procedure. For example, may the child be exhibited to the jury? Some courts allow it to be done irrespective of the child's age. Others permit it conditionally, having regard for the age and physical development of the child, and still others exclude this form of testimony under all circumstances. Many years ago the Supreme Court of Ohio held that there was no error in permitting the child to be exhibited to the jury as evidence in corroboration of the prosecutrix, **49 Oh St 655.** See also **95 A.L.R. 314. 20 Oh Ap 191, (3 Abs 253).**

A similar issue is raised where the court's power is challenged to require the plaintiff in an action for personal injuries to submit to an ex-ray examination. The few cases passing on this question are to the effect that the trial court has broad discretionary powers in this regard. See **22 O. Jur. §3, page 141.**

Other illustrations might be given tending to show the liberal approach of the courts of Ohio where the issue involves discretionary power of the court in the field of civil procedure. And in this case the issue raised affords the court an opportunity to adopt the facts of heredity of blood groups, established by scientific research, as a procedural aid in arriving at the truth of the charge made against defendant. Volume 6 Cyclopedia of Medicine, page 42, fully discusses the subject of heredity. of the blood groups and the progress of scientific research and investigation. This authority concludes "That the agglutinogen A and B can not occur in the blood of the offspring unless it is present in the blood of both parents, and eminent authorities recommend "the practical application of blood of groups in forensic medicine for cases of disputed paternity."

In the American Medical Journal, issue of October 6, 1934 page 1041, there appears an extended discussion of blood group tests in cases of disputed paternity and it is pointed out that the European courts, in cases involving this issue, have used this method for many years. We quote from page 1042

"With regard to the question of absolute certainty it may be appropriate to compare this method of paternity exclusion by blood grouping with that of recognizing individuals by finger prints. Both procedures are borne out by a large body of empirical evidence, and not a single authentic case has been reported that would cast doubt on their reliability."

Tests made in thousands of cases and the results obtained from these studies make it possible to predict what the blood groups of the children must be if the groups of the parents are known. Where the accused belongs to the same group as the child, this would not prove that he was the true father any more than another man of the same group. Therefore the blood grouping test affords a negative test only and in general can be used only to exclude and not to prove paternity. See Current Legal Thought, October issue, 1935, Herzog Med. Jur. §§1100, 1102. Goldstein Trial Technique, §19, page 14.

If it were disclosed that there has been an occasional departure from the form, this would not preclude the court in making the order. The testimony offered is subject to the same tests as evidence generally and may be given such weight by the triers of fact as it is entitled.

There appears to be no reported case in Ohio, but this issue has been before at least three Common Pleas Courts of this state and received favorable consideration. See Bar Association issue of November 26,

1934. There are a few cases outside of Ohio. In a well considered case in New York, reported in Vol. 271 New York Supplement 277, the Supreme Court of Kings County of that state made an order requiring the plaintiff and child, on an issue of paternity, to submit to a blood test. The opinion in this case is well considered. We quote therefrom, on page 278:

"Law and jurisprudence, which are something more than the dry tomes of the past can be understood by considering fundamental principles not only of government and economics, but also at times by giving consideration in particular cases to sociology, medicine, or other sciences, philosophy and history. New concepts must beat down the crystalized resistance of the legally trained mind that always seeks precedent before the new is accepted into law. Frequently we must look ahead and not backwards."

However, on review the Appellate Division reversed this case on the ground that the child is not a party to the action and no showing was made that a blood test would be beneficial to the infant, and also that the statute relating to physical examination is inapplicable. 272 N. Y. Supplement 165.

The Supreme Court of North Dakota has recently considered this question and favorably in the case of State v Demm, 266 NW 667. In Wigmore's Code of Evidence, 2nd Edition, §340, the author says that,

"On any issue in which paternity is material or relevant, the blood-group composition of a particular child, when determined by scientific analysis and compared with that of a particular man, is admissible to evidence that he was not the father."

It is contended by complainant that the court is without power to make the order, as there is no statutory ground in this state providing for blood tests in this kind of an action. The absence of statutory authority is not conclusive. On the other hand, the Legislature has not undertaken to limit the court in exercise of such power. It is also contended that the granting of this order is violative of the Constitutional rights of the plaintiff and her child, either or both, but no authority has been cited to sustain this contention and we know of none.

It is our view that the granting of this order comes within the inherent power of the court in its sound discretion, and where such an order is made and where its execution is properly safeguarded, it does not amount to an arbitrary and unreasonable exercise of power, nor an abuse of discretion.

It is in point to observe that the issue here raised lies in the field of adjective or procedural law and not in the field of substantive law. If the rights of the complainant have been transgressed, she is entitled to a remedy against the transgressor. Such right lies in the field of substantive law. The truth of the charge thus made against the defendant is the issue to be determined and the procedural law is the machinery by which it is determined and the doctrine of the substantive law are made effective. Vol. IC. J.S. 1469.

When we adopt the maxim that for every legal wrong there is a remedy, we must also apply the corollary that every remedy shall be founded on truth and justice. Ways and means for the ascertainment of truth are not statical. The value of scientific research and the truth thus revealed ought to be available to the courts. If this be true, then the courts must have the power, soundly exercised, to bring the light of scientific research and knowledge to bear upon the issues of fact as a further aid in arriving at the truth and in doing complete justice. If this be unsound, then the courts in the application of the remedial law, may fail to keep abreast of the march of progress, and thereby fail to command uniform confidence and respect.

It is no answer to say that there is a lack of express authority unless we conceive that the law is static and lacks the merit of an expansive flexibility, both in respect to the recognition of rights and their invasions, and in respect to the power of the court to discover and apply methods of ascertaining the truth whereby the remedy may be appropriate and coincide with justice.

We conclude that the motion should be granted, with such restrictions as reasonably harmonize with the foregoing finding and an entry may be prepared accordingly, saving exceptions.